905 F.2d 1539
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Elmer WINTERS, Plaintiff-Appellant,
v.
Gerald T. MCFAUL, et al., Defendants-Appellees.
 No. 89-3159.
 United States Court of Appeals, Sixth Circuit.
 June 20, 1990.
 
 Before NATHANIEL R. JONES, KRUPANSKY and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff appeals the jury verdict for defendants in this prisoner civil rights case filed under 42 U.S.C. Sec. 1983.
 
 I.
 
 2
 This case arises from an incident that occurred on April 11, 1984 in the Cuyahoga County Jail. Elmer Winters was an inmate in the jail from March 2, 1984 to May 29, 1984. On April 11, 1984, Winters had an argument with a social worker concerning some information about his divorce decree. A corrections officer intervened and told him to get back into the lockup. Winters alleges that he felt pain in his chest, blacked out and remained unconscious for 30 minutes from approximately 2:10 p.m.--2:40 p.m. He claims that when he came to, he saw nurses and a corrections officer picking up his arm and dropping it on the floor, laughing at him. He told them he had suffered a head injury and was bleeding. He requested to see a doctor at that time but his request was refused. He was seen by jail psychiatrist Dr. Cupala at 5:45, who gave him some medication and referred him to the jail physician. He was also seen by a nurse at 8:00 p.m. The following day he was seen by Dr. Clarence Huggins, who found no external or internal injury or bleeding. Winters also claims that Dr. Huggins told him he could be evaluated by an outside physician. However, Winters states that when his family arranged for him to be examined by a neurologist at the Cleveland Clinic, Dr. Huggins told him he would not be permitted to see the doctor. Winters claims that the above treatment constitutes deliberate indifference to a person's medical need in violation of the Eighth Amendment to the United States Constitution.
 
 
 3
 Winters was transferred to the Cuyahoga County Jail from the Marion Correctional Institute. When he arrived at the jail, Winters suffered from epilepsy, migraine headaches and hypertension. Winter's medical history indicated that he had previously complained of chest pains, migraine headaches, and that he needed glasses. Dr. Cupala also testified that Winters was on psychotropic drugs, and that Winters frequently refused his medication because they made him dizzy.
 
 
 4
 On June 28, 1984, Elmer Winters initiated this action pro se and in forma pauperis against the defendants, Gerald McFaul, Sheriff of Cuyahoga County, and Bruce Stafford, Warden of the Cuyahoga County Jail ("Jail") seeking damages of two million dollars for violations of his civil rights under 42 U.S.C. Sec. 1983. On June 7, 1985 Winters filed an amended complaint adding three Cuyahoga County Commissioners as defendants: Mary O'Boyle, Virgil Brown and Tim Hagen. Dr. Jitendra Cupala, the psychiatrist at the Jail, was also added as a defendant. On May 20, 1986, the district court appointed counsel for Winters. On June 21, 1986, a second amended complaint was filed adding Vincent Campanella, Dr. Clarence Huggins, Gary S. Walter and Kathleen Gilbert, R.N., as defendants. Campanella was a county commissioner and Gary Walter was a guard at the jail. Dr. Huggins and Ms. Gilbert were medical personnel employed at the jail.
 
 
 5
 The complaint alleged that Winters suffered a heart attack and a concussion as a result of the April 11 incident. The second amended complaint alleged that Winters had suffered serious permanent injury. Winters testified at trial that he now has blurry vision, nearsightedness and farsightedness, while prior to the incident he had 20/20 vision. He also claims that his dizziness, chest pain and migraines were aggravated as a result of the fall.
 
 
 6
 On January 5, 1989, the case was tried in the United States District Court for the Northern District of Ohio, Judge Alvin Krenzler presiding. At trial, Winters proffered the testimony of two inmate witnesses to the incident, Carl Motley and Jason King. On appeal, he claims that the trial court would not permit these witnesses to testify in any form. In fact, on December 19, 1986, the district court granted Winters motion to depose these witnesses via telephone. However, Winters' counsel did not schedule these depositions until two days prior to trial. Defense counsel objected to the dates of the depositions and the lack of notice, and sought a protective order, which was granted by the district court.
 
 
 7
 Carol Metz, R.N., testified as the custodian of the medical records at the jail, on behalf of the defense. She stated that Winters' medical records at the jail were kept in the ordinary course of business, and that the copies presented to the court were exact duplicates of the originals in the file.
 
 
 8
 The jury unanimously found against Winters and for Dr. Cupala and Sheriff McFaul. The district court dismissed the complaints against Huggins, Walter, Gilbert, Stafford, Hagan, Brown, and Campanella for lack of service. This timely appeal followed.
 
 II.
 
 9
 A district court's conclusions of law are reviewed de novo. Loudermill v. Cleveland Board of Education, 844 F.2d 304 (6th Cir.1988). "A party is not entitled to a new trial based upon alleged deficiencies in the jury instructions unless the instructions, taken as a whole, are misleading or give an inadequate understanding of the law." Bowman v. Koch Transfer Co., 862 F.2d 1257, 1263 (6th Cir.1988) Evidentiary rulings are reviewed under an abuse of discretion standard. United States v. Curro, 847 F.2d 325, 328 (6th Cir.), cert. denied, 109 S.Ct. 116 (1988).
 
 
 10
 Winters' first assignment of error is that the district court improperly admitted into evidence his medical records at the jail and the incident report filled out by corrections officer Gary S. Walter on the date of the incident. He contends that the medical records should not have been admitted into evidence because a proper foundation was not laid. Winters did not object below on this basis. His only objection before the district court was that Nurse Carol Metz, the custodian of the medical records who testified for the defendants, had not been an employee of the jail at the time of the incident. The law is settled that the person introducing such records need not have been present at the time the records were produced, but simply must be identified as the proper custodian of the records at the time they are introduced. Bridger v. Union Railway Co., 355 F.2d 382 (6th Cir.1966).
 
 
 11
 Winters should have raised his objections based on lack of foundation before the district court. See Fed.R.Evid. 103(a)(1) ("a timely objection or motion to strike [must appear] of record"). However, even if the objection were properly before the court, we note that Drs. Cupala and Huggins testified at length about the content of the medical records and their recollection of their treatment of Winters, thus satisfying any foundation requirements lacking in Nurse Metz's testimony.
 
 
 12
 Winters also argues that the district court erred in admitting into evidence the incident report authored by Walters. Officer Walter had no independent recollection of the incident; however, he refreshed his recollection from a report which he testified was written and signed by him on April 11, 1984. Walters was asked to read the report into evidence under Fed.R.Evid. 803(5), which provides for the admissibility of:
 
 
 13
 A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.
 
 
 14
 Winters contends that the admission of the report into evidence was prejudicial error requiring reversal. Although under Rule 803(5) the report itself should not have been admitted into evidence because it was not offered by an adverse party, any error which occurred is harmless because the report had already legitimately been read into the record by Walters. More importantly, the incident report was properly admissible under 803(6)(a) ("[a] memorandum, report ... made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice ... to make the ... report ... all as shown by the testimony of the custodian or other qualified witness ..." ) Finally, Winters cannot be heard to object on appeal because he failed to object to the introduction of the report at the time the district court received it into evidence. Thus, we find that the district court did not abuse its discretion in admitting these records into evidence under the business records exception, and that if any error occurred in admitting Walter's report under 803(5), such error is harmless.
 
 III.
 
 15
 Winters next claims that the district court erred in failing to permit the two inmate witnesses to the April 11 incident, Carl Motley and Jason King, to testify. Winters' representations with regard to this claim are misleading. The district court did not prevent the testimony of the inmates, and in fact on November 14, 1986, the court granted Winters permission to depose these inmates via telephone. However, neither Winters nor his counsel took action until January 3, 1989, when Winters filed a duplicate motion to depose via telephone. The case was set for trial on January 5. Opposing counsel was informed at 10:00 a.m. on January 3 that Winters intended to take the depositions that day. Defense counsel objected that they could not clear their calenders to be available on either January 3 or 4. They then applied to the court for a protective order under Fed.R.Civ.P. 26(c). In support of the motion for a protective order, defense counsel stated that they were not given reasonable notice, and that Winters should not be permitted to depose by phone. Because the failure to depose the witnesses is due to defense counsel's negligence, the district court committed no error in granting the protective order.
 
 IV.
 
 16
 Winters next claims that the district court erred in failing to instruct the jury on his state law claim on the basis of Ohio Rev.Code Sec. 341.01 (Baldwin 1988). The sole mention of this claim is in passing under the fourth claim of the complaint, where, in the course of laying out the alleged Sec. 1983 violations, it states:
 
 
 17
 McFaul had direct statutory responsibility for day to day management of the jail, including responsibility for keeping inmates safely. O.R.C. Sec. 341.01. (Appellant's second amended complaint).
 
 
 18
 J.App. at 31. The district court interpreted this paragraph to be a simple recitation of McFaul's responsibility as Sheriff and not as a separate cause of action. Winter did not raise the state claim before the district court prior to the meeting on jury instructions, nor does he point to any attempt to try this claim in the record. Furthermore, no evidence was presented to the jury on this issue. Finally, the court declined ancillary jurisdiction under United Mine Workers v. Gibbs, 383 U.S. 715 (1966), permitting Winter's to proceed in state court on this claim. Given Winters' tardiness in advising the court that he intended this to be an actionable claim, and his failure to point to any mention in the record of his attempt to prove his state claim, the district court did not abuse its discretion in refusing ancillary jurisdiction.
 
 V.
 
 19
 Winters' final assignment of error is that the district court improperly dismissed Gary S. Walter as a defendant under Fed.R.Civ.P. 4(j), which states:
 
 
 20
 If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion. (emphasis added).
 
 
 21
 Although Walters' name was listed in the complaint, he was never served. Moreover, Winters did not object to the dismissal below, nor did he offer to show good cause why service was never made. The fact that Walters was aware of the proceedings and appeared as a witness for the defense, does not mean that he was prepared to defend the action. Winters claims that Walters was represented by counsel appearing for the City and the officers. However, the defense points out that if the allegations against Walters were taken as true, his actions would be outside the scope of his employment and he would have needed to retain independent counsel. Thus, because Walters was never served, the district court did not err in dismissing the complaint against him under Fed.R.Civ.P. 4(j).
 
 VI.
 
 22
 For the foregoing reasons, we AFFIRM the judgment of the district court.